OPINION OF THE COURT
Bruce M. Kaplan, J.
On July 20, 1977, the Commissioner of Social Services, as assignee of Lydia L, petitioned the court to have Vidal L declared the father of Cynthis L, a child born to Lydia L on August 21,1964.
Respondent’s attorney interposed the defense of the Statute of Limitations, and moved to dismiss the petition because it had been brought more than 10 years after Cynthis’ birth. (Family Ct Act, § 517, subd [b].)
*508 The petitioner’s counsel resisted this motion on the ground that respondent had acknowledged paternity by instrument dated April 18, 1977.
In order to sustain petitioner’s position two questions must be answered in the affirmative. The first is whether written acknowledgement executed after the Statute of Limitations has run serves to toll it.
The second is whether the tolling mechanism afforded litigants in subdivision (a) of section 517 of the Family Court Act can be read into subdivision (b) of section 517. The latter subdivision provides a 10-year Statute of Limitations with respect to proceedings brought by the Commissioner of Social Services.
The execution of a written acknowledgement more than two years after a child’s birth serves to toll the Statute of Limitations. (Matter of Dolores D. v Mario N. D., 69 Misc 2d 689.)
In that case the court interpreted subdivision (a) of section 517 quite literally. It held that since the section does not specify when the acknowledgement must occur, the statute is tolled at any time that it does.
The court conjectured that the dearth of cases on this point might be ascribed to the fact that this point of law would be obvious on its face.
The conclusion is a logical one since it is a basic principle of law that the Statute of Limitations serves to bar the remedy, not the right (Sears, Roebuck & Co. v Eneo, 43 NY2d 389).
The knottier problem of whether a petitioner under subdivision (b) of section 517 can avail itself of the tolling provisions contained in subdivision (a) of section 517 requires examination and analysis of principles of statutory construction, as well as the policy considerations that occasioned the adoption of that particular time period.
It is a well-settled principle that ”expressio unius est exclusio alterius”, i.e., the inclusion of a particular person or thing in a statute implies the exclusion of other persons or things. This has been codified into New York law. (McKinney’s Cons Laws of NY, Book 1, Statutes, § 240.)
In applying this test to section 517 the court notes that it consists of subdivisions "(a)” and “(b)”.
Subdivision (a) applies to private litigants, has a two-year Statute of Limitations, and specifically enunciates a tolling *509 mechanism. Subdivision (b) applies to the Commissioner of Social Services, provides a ten-year Statute of Limitations, and makes no mention of a tolling mechanism.
Since subdivision (a) contains a tolling device, and subdivision (b) does not, it is unwarranted to read one into it.
This finding is buttressed by decisional law and legislative history.
Section 517 of the Family Court Act derived from two identical provisions. These provisions were contained in article 8 of the Domestic Relations Law, "Support and Education of Children Born Out of Wedlock, and Proceedings to Establish Paternity”, as added by chapter 255 of the Laws of 1925, and article 3-b of the Inferior Criminal Courts Act of the City of New York in relation to the support and education of natural born children, as added by chapter 434 of the Laws of 1930.
They permitted the predecessors of the Commissioner of Social Services to bring a paternity proceeding up until the infant had reached the age of 16. This lengthy grant of time was upheld as constitutional (Commissioner of Public Welfare of City of N. Y. v Simon, 270 NY 188).
The predecessor statute to section 517, subdivision 1 of section 64 of the New York City Criminal Courts Act, was contained in a single paragraph and referred to the bringing of suits within two years absent acknowledgement by the father in writing, or the furnishing of support. It went on to provide an exception for the New York City Department of Public Welfare by authorizing it to bring on behalf of any child under 16 who is, or is liable to be a public charge.
The meaning of this statute was subject to conflicting interpretations in the First Department and the Second Department. The former found a two-year Statute of Limitations (Commissioner of Public Welfare of City of N. Y. v Jackson, 240 App Div 142, aifd without opn 265 NY 440), while the latter found a 16-year one (Commissioner of Public Welfare [Harris] v Gavin, 245 App Div 545).
The thrust of the First Department position was that a written acknowledgment, or the furnishing of support was a necessary predicate to allow the commissioner to bring suit past the two-year period and up to age 16.
The Second Department stated that subdivision 1 of section 64 provided a specific mandate to bring suit on behalf of a child under 16 who is or is liable to become a public charge. It *510 further found that right to be independent of any right mentioned in the two-year general limitation.
This reasoning found approval by the Court of Appeals in Commissioner of Public Welfare of City of N. Y. v Simon (supra), and the conflict was resolved accordingly. I interpret that holding as a judicial recognition of a two-level scheme of limitations with each level functioning wholly independent of the other. The drafters of the Family Court Act have seemingly followed that view. (1 Schatkin, Disputed Paternity Proceedings [4th ed rev], § 13.07 [Sept., 1977 Supp].)
The Joint Legislative Committee on Court Reorganization comments contained in McKinney’s Family Court Act merely recite that this section borrows from the afore-mentioned sections of the Domestic Relations Law and New York City Criminal Courts Act.
This court has sought to ascertain what specific considerations had motivated the drafters of the act to shorten the period of limitation when a paternity proceeding could be brought by the commissioner.
The court was able to have examined a contemporaneous draft of the act, and the working comments appended thereto. They were silent as to the reasons for this change.
This court can only conjecture that the change emanated from a recognition of the problems of proof created by the former 16-year period (see Matter of "Mendes” v "Penny-feather” 11 Misc 2d 546). That conjecture is reinforced by the continued criticism of the present 10-year statute. (See Matter of Mores v Feel, 73 Misc 2d 942; Matter of Commissioner of Welfare of City of N. Y. v Jones, 73 Misc 2d 1014; 1 Schatkin, Disputed Paternity Proceedings [4th ed rev], § 13.07.)
The criticisms are cogent and apposite. The prosecution of a paternity proceeding is a delicate matter, at once emotionally laden, and necessarily given to sharply contended factual questions. These matters are best resolved by trials commenced at a time when memory is sufficiently extant that particular facts are susceptible of proof of utmost certainty.
It should be appreciated that the policy considerations pertinent to a discussion of limitations generally, are particularly germane in paternity proceedings.
The passage of time militates against that clarity of recollection necessary to adduce clear and convincing evidence on the part of the petitioner. The respondent is also likely to be *511 disadvantaged, for the memory of his whereabouts and activities at a remote point in time must be diminished, and yet the certainty of these details is vital to his case.
Another problem arises with respect to those witnesses called to testify as to their own intimacy with the petitioner during the crucial time in question.
While they may have been single at the time of the occurrence their testimony might trigger untoward domestic strife if their wives chose not to be understanding of bygone peccadilloes. If they were not their discomfort would be multiplied.
Nevertheless it is not unreasonable to afford the commissioner a greater time than ordinary litigants in which to commence paternity proceedings. The concerns that actuated the Legislature to grant this latitude are historical in nature and reasonable in classification.
Paternity proceedings were unknown at common law and paternity statutes must hark back to the Elizabethan Poor Law of 1576 (18 Eliz I, ch 3) which provided the government with a means for recouping funds advanced for a child’s support.
Subdivision (b) of section 517 of the Family Court Act reflects the determination that the conservation of the public purse outweighs the potential for "gross unfairness” and "exceptional harshness” (Matter of Mores v Feel, 73 Misc 2d 942, 948, 949, supra) that may inhere to respondents in particular situations.
However, there comes a point in the balancing of interests where the objective of curtailing public expenditure must yield to the objective of fostering a setting where a clear and accurate recounting of facts in issue can obtain.
This point is marked by refusing to recognize a tolling mechanism for suits brought by Commissioner of Social Services.
It is for these reasons that the court finds that the no tolling procedure is available in a suit brought by the Commissioner of Social Services, and the petition must be dismissed.