OPINION OF THE COURT
Ruth Jane Zuckerman, J.
On September 2, 1981, respondent moved to vacate and set aside an order, entered by the court on June 2, 1981, directing that the parties to this paternity proceeding, and the children whose paternity is in dispute, submit to a human leucocyte antigen blood tissue test (hereinafter H.L.A. test). Although counsel for respondent conceded the court’s legal authority, pursuant to section 532 of the Family Court Act, to order such test, he contended that the H.L.A. test, if compelled, would conflict with the provisions of section 531 of the act, as construed and applied by the Court of Appeals. For the reasons set forth below, respondent’s motion is denied in all respects.[1]
Section 532 of the Family Court Act, as amended, provides as follows: “The court, on motion of any party, shall advise the parties of their right to a blood test and shall order the mother, her child and the alleged father to submit to one or more blood grouping tests by a duly *801 qualified physician to determine whether or not the alleged father can be excluded as being the father of the child, and the results of such tests may be received in evidence but only in cases where definite exclusion is established. However the results of the human leucocyte antigen blood tissue test may be received in evidence to aid in the determination of whether the alleged father is or is not the father except in cases where exclusion has already been established by other blood grouping tests. If the alleged father is financially unable to pay for the costs of a test, the court may direct any qualified public health officer to conduct such test, if practicable; otherwise, the court may direct payment from its own funds where the child is not and is not likely to be a public charge or from the funds of the social services officer where the child is or is likely to be a public charge.”[2] Respondent contends, however, that notwithstanding the plain language of section 532, he cannot be compelled to submit to the H.L.A. test in view of section 531 of the Family Court Act which states, in pertinent part, that: “The mother or the alleged father shall be competent to testify but the respondent shall not be compelled to testify.” (Emphasis supplied.)
In support of his contention, respondent relies principally upon Matter of Margaret B. v Gilbert W. (41 NY2d 971), in which the New York Court of Appeals reversed, on the dissenting opinion of Mr. Justice Louis J. Capozzoli at the Appellate Division,[3] the Appellate Division’s affirmance of a Family Court order, as modified, which had granted pretrial disclosure to the petitioner in a paternity action. In his dissenting opinion, Justice Capozzoli observed that the pretrial disclosure provision of CPLR 3101 (subd [b]) limited discovery to nonprivileged matters,[4] and that section 531 of the Family Court Act established the respondent’s privilege from being compelled to testify in a paternity proceeding. Since “matters which would be privi *802 leged at trial cannot be obtained by deposition,”[5] Justice Capozzoli concluded, and the Court of Appeals agreed, that section 531 gave respondent complete protection against being compelled to testify or produce evidence, not only at the hearing, but also at the pretrial discovery stage of a paternity proceeding.
The instant case is clearly distinguishable from Matter of Margaret B. v Gilbert W. (supra), which involved the application in paternity actions of the pretrial discovery provisions of the CPLR in light of the privilege created by section 531 of the Family Court Act. In the case at bar, by contrast, what is at issue is an alleged violation of respondent’s rights under section 531 of the act, as construed and applied by the Court of Appeals in Matter of Margaret B., if section 532 is held to compel respondent to submit to an H.L.A. test, the results of which would be admissible at trial to establish paternity.
The conflict between the two provisions of the Family Court Act is, however, more apparent than real. Initially, it must be noted that when the Legislature amended section 532 in 1981, it presumably was aware of the privilege created by section 531, as well as the Court of Appeals decision construing and applying the earlier enactment. The clear implication from this is that the Legislature viewed the amendment to section 532 either as creating an exception to the privilege that had previously been created by section 531, or, more probably, as falling completely outside the scope of the prohibition against testimonial compulsion that is contained in section 531.
That the respondent’s privilege not to be compelled to testify is not violated, or even implicated, when he is ordered by the court, pursuant to section 532, to submit to the H.L.A. test appears clear from the case law relating to compulsory blood tests that has developed in the context of criminal proceedings. The United States Supreme Court in Schmerber v California (384 US 757), held that an accused’s privilege against self incrimination under the Fifth and Fourteenth Amendments was not implicated where he was subjected involuntarily to a blood test to determine if *803 he was driving while intoxicated. The court reasoned that the blood test evidence obtained for use in a criminal case was not “testimonial” or “communicative” and thus was not covered by the privilege. The court stated (p 763): ‘“[T]he prohibition of compelling a man in a criminal court to be a witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material. The objection in principle would forbid a jury to look at a prisoner and compare his features with a photograph in proof.’ ” (Quoting from Holt v United States, 218 US 245, 252-253.) The court also stated in Schmerber that (p 764): “The distinction which has emerged, often expressed in different ways, is that the privilege is a bar against compelling ‘communications’ or ‘testimony’, but that compulsion which makes a suspect or accused the source of ‘real or physical evidence’ does not violate it.” Thus, the United States Supreme Court’s decisions make clear that “blood test evidence although an incriminating product of compulsion”, is “neither * * * testimony nor evidence relating to some communicative act or writing”, and that therefore it is “not inadmissible on privilege grounds.” (Id., at p 765.)
Since a defendant in a criminal case can be compelled to submit to a blood test without violation of his Fifth Amendment privilege against self incrimination, it is clear that a respondent in a paternity action, which is now recognized to be a civil proceeding, can also constitutionally be compelled to submit to blood tests, including the highly probative H.L.A. test. (Matter of Linda K. L. v Robert S., 109 Misc 2d 628; Matter of Carmen I. v Robert K., 110 Misc 2d 310; Matter of Jane L. v Rodney B., 108 Misc 2d 709, 713, n 6.) Moreover, it follows from the foregoing principles that respondent’s statutory privilege against self incrimination, embodied in section 531 of the Family Court Act, is in no way violated, or even implicated, when respondent is ordered by the court to submit to the H.L.A. test since the test, unlike the pretrial discovery procedures at issue in Matter of Margaret B. v Gilbert W. (supra), is not testimonial in nature.
*804 For all the foregoing reasons, respondent’s motion to vacate the order entered pursuant to section 532 of the Family Court Act and for other and further relief is in all respects denied.[6]

. In the alternative, respondent sought an order relieving him from submitting to the H.L.A. test.

. The italicized portion of the above-quoted statutory provision was added by L 1981, ch 9.

. 51 AD2d 456, 461-462 (dissenting opn).

. CPLR 3101 (“Scope of Disclosure”), in pertinent part, provides as follows: “(b) Privileged matter: Upon objection of a party privileged matter shall not be obtainable.”

. Matter of Margaret B. v Gilbert W., 51 AD2d, at p 461 (dissenting opn; citations omitted).

. In his supplemental memorandum, counsel for respondent also argued that no adverse inference or presumption should flow from respondent’s refusal to submit to the test, and, in support of this argument, referred to the recent decision in Moon v Crawson (109 Misc 2d 902). The Moon case is, however, not on point since there, respondent refused an offer, rather than an order, to submit to the H.L.A. test, and no motion to compel such testing was made prior to the hearing. In any event, it would be improper for this court to render what, at this stage of the proceedings, would be an advisory opinion as to the legal consequences — evidentiary or otherwise — that might follow should respondent fail to comply with the court’s order.