OPINION OF THE COURT
Charles F. Graney, J.
The petition was brought by the Genesee County Department of Social Services seeking an order declaring the respondent to be the father of the child of Gail A. The child was born on March 13,1981 and was a full-term baby. The mother has testified that she had sexual relations with the respondent on a regular basis during the months of March, April and June, 1980. Respondent admitted to having sexual relations with the mother on about six occasions, but not after April 24, 1980.
Upon motion of the respondent a blood grouping test (Landsteiner red cell) was ordered and performed and upon motion of the petitioner a human leucocyte antigen blood tissue test (HLA) was ordered and performed. Prior to the amendment of section 532 of the Family Court Act, effective March 2, 1981, the statute only provided for the red cell blood grouping test and provided that this test could be introduced into evidence only if the results exclude the putative father as a possible parent. This was because, *488 while the test was a reliable and accepted scientific procedure, it was not sophisticated enough to exclude more than 60% of random males and therefore had no probative value as affirmative proof of paternity. The HLA test, on the other hand, can under certain circumstances exclude in excess of 98% of random males as a possible parent for a subject child. Because of its capabilities, well recognized in the scientific field, the New York Legislature has determined that this test can be of sufficient probative value to permit it to be used as affirmative evidence of paternity. The legislative history of the new amendment indicates that its purpose is to provide that the results of recognized scientific tests, which indicate with a high degree of certainty the probability of a particular individual being the father of a child, be received in evidence in paternity and support proceedings. Whether the instant proceeding is viewed as purely an economic action or one determinative of the child’s status there are many important policy considerations that favor the accurate determination of paternity for every child born out of wedlock.
The petitioner offered in evidence the results of the HLA test. Testimony as to the performance of the test was given by the supervisor of the American Red Cross Histo-compatibility Department in Rochester, New York, which performed the test. The test results were interpreted by Dr. Ruth Barrett, pathologist, Arnold Gregory Hospital, Albion, New York, where the blood samples were secured. The results of the HLA test were accepted into evidence.
Dr. Barrett testified that the HLA test excluded all but 6% of random males of the respondent’s race. Stated differently, the probability that the respondent was the father was 16 to 1. Dr. Barrett stated that in scientific terminology, it was “likely” that the respondent was the father.[1]
*489 Next the petitioner sought to introduce evidence of the red cell blood grouping test. Dr. Barrett testified that the test did not exclude the respondent and that when she combined information from that test with the information from the HLA test it would increase the precision of the identification process. The respondent objected to introduction of the test results on the basis that the statute only permits the red cell blood grouping test to be used as evidence if it excludes the putative father.
We feel that, even though the Legislature did not change the wording of the statute in this respect, the respondent’s objection should be denied and the results of the red cell blood grouping test admitted in this case. Even though it is not provided for in the statute, common-law rules of evidence would indicate the testimony can be received. Expert opinion may be given as to the results of reliable and accepted scientific tests (see Iovino v Green Bus Lines, 277 App Div 1002; cf. CPLR 3121). It is clear that the red cell blood grouping test is such a test. The reason its use was limited to exclusionary situations in the past was that the test was not precise enough to be of probative value if there was not an exclusion. However, this is no longer true when the test can be combined with the now accepted HLA test.[2] It is in the interest of all parties, and especially the child, to have paternity established as accurately as possible. It would be unreasonable not to utilize all available and scientifically accepted technology.
In view of the purpose of this legislation it can be assumed that the failure to change the language in regard to admissibility of the red cell blood grouping test was a legislative oversight. It could be argued that rules of statutory construction would permit use of the blood grouping test in this case (cf. Matter of Commissioner of Social Servs. *490 v Jessie B., 111 Misc 2d 617; McKinney’s Cons Laws of NY, Statutes, Book 1, §§ 76, 143, 223). It is recommended that the current Legislature consider an amendment which would permit the use of this test, even if it does not exclude the putative father, when offered in combination with the HLA test. Of course, there would still be no basis for using this test for proof of paternity except in combination with a nonexclusory HLA test.
Evidence of the result of the red cell blood grouping test was admitted. Dr. Barrett’s testimony indicated that when the red cell blood grouping test and HLA test in this case were interpreted together all but 2.25% random males of the respondent’s race were excluded but the respondent was not. Stated differently, the probability that the respondent was the father was 43 to 1. She testified that in scientific terminology it was “very likely” that the respondent was the father of the child.[3]
The court finds that the respondent had sexual intercourse with the petitioner during the period of possible conception, June, 1980 and that reliable scientific tests establish that it is “very likely” that the respondent is the father of the child and concludes that it has been proven by clear, convincing and entirely satisfactory evidence that the respondent is the father of the subject child.

 Table 14-2 Likelihood of Paternity*
w PI Likelihood of Paternity
99.8 to 99.9% * 399:1 Practically proved
99.0 to 99.7% > 95:1 Extremely Likely
95.0 to 98.9% > 19:1 Very Likely
90 to 94.9% > 9:1 Likely
80 to 89.9% 4:1 Hint
Less than 80% 4:1 Not useful

(Modified from. Hummel, K., Ihm, P., Schmidt, V., and Walliser, G.: Biostatistical Opinion of Parentage Based on the Results of Blood Group Tests, Stuttgart, Gustav-Fischer Verlag, 1971.)

. “By combining the calculated probability of inclusion on the basis of HLA typing with the product of the probabilities taken from other blood group markers, extremely high probabilities for assignment of paternity can be obtained in some cases (footnote omitted).” (Pollack, Schafer, Barford and Dupont, Parental Identification of Paternity, 244 Journal of the American Medical Association 1954.)

. N 1 (supra).