OPINION OF THE COURT
Arthur J. Abrams, J.
On January 21,1982, the Suffolk County Department of Social Services filed a paternity petition on behalf of Janet R. seeking (1) an order declaring respondent, Kenneth N., to be the father of a male child, Mark R., born out of wedlock to Ms. R. on January 9,1973, and (2) an appropriate order of support for the said child. The respondent interposed a denial and demanded an ABO (red cell) blood-grouping test. That test was held, no exclusion found and the matter then calendared for trial on December 2, 1981. Subsequently, the respondent requested a human leucocyte antigen (HLA) test, the request was granted and the test conducted on April 20, 1982 by the Lindsley E. Kim-ball Research Institute of the New York Blood Center. Upon the respondent’s failure to appear on the scheduled trial date, the matter proceeded to inquest (before another Judge of this court) and a filiation order entered on June 29, 1982.
Thereafter, on consent of both parties and upon a showing of excuse for the default, the matter was reopened for trial and transferred to the undersigned. -The matter was adjourned several times for various reasons, finally testi *454 many was taken on January 11, 1983, January 17, 1983, March 7, 1983, March 8, 1983 and May 20, 1983. Decision was then reserved.
Based upon the credible evidence adduced during the trial, the court makes the following findings:
(1) The subject child, Mark R., was born January 9,1973 in Bay Shore, New York.
(2) That such birth was the product of a full-term pregnancy of the natural mother, Janet R.
(3) That the respondent, Kenneth N., engaged in sexual intercourse with Ms. R. at the time of probable conception.
(4) That the natural mother also engaged in sexual intercourse with a third party, to wit: a Mr. H., at the time of the child’s probable conception.
(5) That no evidence has been offered that Ms. R. engaged in sexual intercourse with any other male, other than the two others alluded to aforesaid, at the time of the child’s conception.
The court does not hesitate to state that if the above were the only findings that we could make in this proceeding, the instant petition would be dismissed. Indeed, considering the relatively undisputed fact that the natural mother had access to and did engage in sex with a third party at the time of conception, the court would be hard put to be clearly convinced that the respondent, and not the third party, was the father of this out-of-wedlock child. However, the above findings are not the only facts that the court will be called upon to determine in this matter, for the petitioner introduced into evidence the results of the parties’ April 20, 1982 HLA blood test. The said test results were received into evidence as a business record under CPLR 4518 upon the testimony of an employee of the Lindsley E. Kimball Research Institute of the New York Blood Center (see, e.g., Matter of Rosemary W. v Bruce A., 113 Misc 2d 745). The written HLA blood test results included, rather than excluded, the respondent, Kenneth N., as being the probable father of the child born out of wedlock to Janet R. on January 9, 1973. Nonetheless, the respondent urges that the HLA test result is insufficient to bolster petition *455 er’s evidence to a clear, convincing and entirely satisfactory degree.
There is no dispute that in a proceeding such as this, a properly administered human leucocyte antigen test may be utilized as affirmative proof of paternity. (Matter of Alicia C. v Evaristo G., 93 AD2d 820.) The test is widely accepted and has been afforded legislative approval and the results may give rise to prima facie evidence of the facts contained in the said report. (Family Ct Act, § 532; CPLR 4518, subd [c]; Matter of Pratt v Victor B., 112 Misc 2d 487; Matter of Catherine H. v James S., 112 Misc 2d 429.) While the respondent does not question the scientific validity of the HLA test or otherwise attack its fundamental basis, his dispute is with the interpretation of the results proffered in this particular case.
The first page of the HLA report states that there are no contraindications to the laws of the theoretical expectancy (the respondent’s) paternity therefore cannot be excluded. The test report further indicates that there is a “combined paternity index of 38.6 and that the plausibility of the respondent’s paternity in this case is .976.” While the latter figure is further explained by an attachment to the test result known as Hummel’s Predicate wherein such .976 figure is suggested to mean that paternity is “very likely”, the court has excluded same upon objection as being tendered without foundation.
The figures set forth in the Lindsley E. Kimball’s calculations of plausibility of paternity are not entirely unintelligible, inasmuch as the court has read various works on the subject of HLA testing. (Sussman, Up to Date Testing for Paternity and Non-paternity, Trauma [June, 1982]; Houts, Presenting the Medical Evidence, Blood Testing in Paternity Cases, Trauma [Oct., 1982]; Ellman & Kaye, Probabilities and Proof: Can HLA and Blood Group Testing Prove Paternity?, 54 NY Univ L Rev 1131; Shatkin, Disputed Paternity Proceedings, ch 6.) The respondent’s plausibility of paternity stated in the HLA report herein .976 means, as we understand it, that the respondent, Kenneth N., is 97.6% likely to be the.father of the child herein based upon a comparison of his genetic indicators relative to those of the random sale population. The second *456 figure, the combined paternity index, is perhaps more helpful. The respondent’s index in this case 38.6 is basically an odds calculation which means that if we divide the index figure 38.6 into a random sampling of one 1,000 males, 26 males including the respondent would possess the necessary genetic markers needed to produce the genetic results found in the child herein. The respondent urges that the paternity index reported in the HLA result herein is too low a figure for the court to base a finding of paternity. He suggests that since 25 other random males in a group of 1,000 could have fathered the child, that the court accordingly cannot be convinced of his paternity.
Assuming the fundamental validity of the respondent’s paternity index in this proceeding, the following example may be enlightening. One thousand jelly beans are placed in a large jar, with 974 colored red and 26 green (representing the equivalent comparisons of “excluded males” and “included males”, respectively, in this case). If one were asked without looking, to reach in and pick one of the 26 green jelly beans (approximately 1 out of 38) what would be the likelihood of his successfully picking a green bean? We believe anyone conversant with the laws of probability would readily acknowledge the chances of drawing a green jelly bean are slight.
How to apply the above to the facts in this case, as stated previously, the respondent contends that the possibility that 26 men out of 1,000 randomly selected males could conceivably have fathered Mark is sufficient to preclude a clear, convincing and entirely satisfactory paternity finding. Respondent further contends that as H. had relations with Ms. R. at the critical conception time (a fact found by the court), he, H., could be 1 of the 25 other males (excluding the respondent) who could be Mark’s father. While it is acknowledged that theoretically 26 men out of the aforesaid 1,000 could have the same genetic markers as the child herein, the court, by determining that Janet R. only had intercourse with two males during her period of conception has narrowed the issue to an extent far greater than that suggested by respondent. The actual issue as we perceive it, is who fathered the child, the respondent or Mr. H.?
*457 Idyllically, one would wish to subject Mr. H. to the same HLA test as N., however, as his (H.’s) whereabouts are unknown, that is impossible. Nonetheless, there is sufficient information before the court for a decision to be made. The respondent’s reasoning is fallacious. He has confused being the father with the potential of being the father. He contends that there is a 2.6% (26 out of 1,000) chance that H. fathered Mark; but 2.6% is only the potential chance of H. being the father. To determine actual mathematical likelihood of this being the case, the 2.6% figure must be halved. Even if it could be determined that H. possessed the requisite genetic markers to be Mark’s father, there remains a one-half chance that Mr. N. is the father on the basis that it has already been established that N. and the child have the same genetic markers. Therefore, the possibility of someone other than the respondent being the father is not 2.6% but 1.3%. The HLA test result herein cannot be ignored by the existence of this ever so slight prospect. Predicated upon the testimony and the HLA test results, we are satisfied that Kenneth N. has fathered the child, Mark, by the requisite burden of proof. The petition, accordingly, is established and an order of filiation is to be prepared by the disposition department forthwith.
The disposition department is further directed to schedule a support hearing for August 9,1983, Part 6, and notify both parties and their attorneys.