OPINION OF THE COURT
Hugh A. Gilbert, J.
Prior to March 2,1981, blood grouping tests were admissible in paternity cases only for the limited purpose of definitely excluding a respondent from being the father of the subject child. Since that date, the human leucocyte antigen blood tissue test, commonly designated as an HLA test, may be received in evidence to aid in the determination of whether a respondent is or is not such father. (Family Ct Act, § 532, subd [a].) The original concept was that this “test is highly accurate on the issue of paternity and should be employed to avoid unnecessary litigation.” (Matter of Karen K. v Christopher D., 86 AD2d 633, 634.)
As denoted in the instant factual situation, however, uncertainties and inconsistencies are emerging at the pretrial and trial level of paternity proceedings which may severely delay this objective.
The results of the human leucocyte antigen blood tissue test have been deemed to have a high degree of probative value. They are to be afforded great weight by the Bench and the Bar. (Matter of Bowling v Coney, 91 AD2d 1195, 1196; Matter of Kimiecik v Daryl E., 87 AD2d 284, 285.) The over-all standard of proof in a paternity proceeding is *249 that paternity must be established by clear, convincing and entirely satisfactory evidence. Such evidence must create a genuine belief that respondent is the father of the subject child. (Matter of Commissioner of Social Servs. v Philip De G., 59 NY2d 137, 141-142; Matter of Piccola v Hibbard, 51 AD2d 674, affd 40 NY2d 1035.) Applying the general maxim of the HLA test to, and reconciling it with, this standard of proof is emerging as an uncertain and inconsistent procedure.
An initial difficulty is defining which test the Legislature intended to recognize as having such high degree of accuracy that it could be received for the establishment of paternity, rather than merely the exclusion of a putative father. As in the instant factual situation, two tests are sometimes submitted to the attorneys and then to the court. One establishes a probability of paternity of 92.57%, “using the HLA system”. The other establishes a probability of paternity at 98.87% “using the HLA system, along with ABO, RH, MNSS, Kell, Duffy, and Kidd”. The attorneys and trial courts are confronted with different testing procedures and varying testing results. One reasonable interpretation is that only the former may be considered until the Legislature defines the phrase “human leucocyte antigen blood tissue test” more broadly or accurately. (Matter of Lorraine M. v Linwood M. S., 115 Misc 2d 922.) The alternative reasonable interpretation is that the Legislature intended the courts to have any additional testing results which could assist in resolving the issue with greater accuracy. (Matter of Catherine H. v James S., 112 Misc 2d 429; Matter of Pratt v Victor B., 112 Misc 2d 487; see, also, Matter of Department of Social Servs. v Thomas J. S., 100 AD2d 119, 123.) Until this issue is resolved, the attorneys will not be able to evaluate properly such tests and the goal of curbing unnecessary litigation will not be realized. Furthermore, contradictory judicial decisions will be fostered.
In addition to guidance as to the selection of an appropriate test, the lack of specific interpretive criteria should be considered. What do the various degrees of probability mean? In our factual situation, the pure HLA test not only lists the probability of paternity as 92.57%, but also refers *250 to a combined paternity index of 12 to 1, whereas the combined test has a probability of 98.87% and an index of 88 to 1. How significant are these differences? What interpretation should the Bar and Bench give if only one of those tests were before it? “Advancing medical technology has produced tests which offer the opportunity to resolve paternity disputes with more accuracy than unaided traditional evidentiary techniques are likely to obtain. Proper understanding of the test results, however, require statistical reasoning with which courts are typically unfamiliar.” (Ellman and Kaye, Probabilities and Proof: Can HLA and Blood Group Testing Prove Paternity?, 54 NY Univ L Rev 1131, 1161.)
Should a table setting forth categories of the likelihood of paternity be legislatively or judicially adopted? One such table, as appeared in the March, 1981 edition of the New York Journal of Medicine, at page 343, would define the respondent herein “very likely” to be the father pursuant to the combined test and “likely” pursuant to the pure HLA test. (See, also, Matter of Catherine H. v James S., 112 Misc 2d 429, supra; Matter of Pratt v Victor B., 112 Misc 2d 487, supra; Department of Social Servs. v Kenneth S. N., 120 Misc 2d 453.) However, another table would determine a “very probable paternity” and then a “weak indication of paternity” in interpreting these same respective tests. (Matter of Reid v White, 112 Misc 2d 294, 296-297.)
It is respectfully submitted that the Legislature not consider the current statutory language recognizing the human leucocyte antigen blood tissue test as the ultimate resolution of paternity disputes. The above selection and interpretive issues are now emerging and require review. This is especially important to the trial court which must evaluate the test and include such evaluation in its finding of fact. (Matter of Sherry K. v Carpenter, 90 AD2d 687.) It should be noted that the HLA test was first developed and used only approximately 16 years ago and three years ago New York became one of the first States to adopt it for the purpose of proving paternity (Herzog, The HLA Test: New Method for Resolving Disputed Paternity Cases, 55 NY St Bar J, May, 1983, pp 34, 35).
A third issue is whether situations may occur when the test result or results may be disregarded by the trial court. *251 Such a situation would appear to arise herein, whereby the court does not have to address the issues of test selection and interpretive analysis. There is an acknowledged act of sexual relations with another man during the critical period of possible conception. The period of gestation with regard to this man more closely approximates the normal period of gestation than with regard to respondent. The realistic possibility of two different men being the father raises at the very least a serious doubt with regard to any percentage of probability or paternity index attributable solely to the respondent. An authoritative text has recently commented, “when there is a report indicating actual paternity the alleged father may controvert that result, especially if he knows that the mother was promiscuous or sexually involved with another man.” (1 Schatkin, Disputed Paternity Proceedings [4th ed, rev], Oct., 1983 Supp, § 8.13, p 83.) Furthermore, “[i]t is implicit in paternity cases that the petitioner will deny any sex relations with another man during the critical period.” (1 Schatkin, Disputed Paternity Proceedings [4th ed, rev], p 7.) It most likely should be interpreted to negate totally the applicability of the test herein, and the court should proceed to make a determination as if no test had been administered. (But see Department of Social Servs. v Kenneth S.N., 120 Misc 2d 453, supra.) “Terasaki, the major advocate of HLA testing, himself admits that it is not ‘meaningful in distinguishing between two related nonexcluded putative fathers’ ”. (Juhase, HLA Paternity Testing: Who Needs Family Court Judges, 31 Brooklyn Barrister, 143, 151.) How much less meaningful it must be when it is not even administered to one of two possible fathers.
Absent expert medical testimony, respondent’s alleged act of sexual intercourse does not fall within the currently defined minimum practical range of a normal period of gestation. (Matter of Commissioner of Social Servs. v Gibson, 55 NY2d 681; Commissioner of Social Servs. v Philip De G., 97 AD2d 760.) With or without expert medical testimony, and despite the HLA test, the conclusion is inescapable that the other man is at least as likely as respondent to be the father of the subject child. In fact, if the alleged anticipated date of birth testified to by petitioner were verified by medical records or testimony, the *252 normal period of gestation would be more nearly satisfied by the other man’s act of sexual intercourse than by that of respondent.
Therefore, petitioner has failed to prove by clear, convincing and entirely satisfactory evidence that the respondent is the father of the subject child. (Matter of Commissioner of Social Servs. v Hayes, 74 AD2d 731; Gail M. v William P., 57 AD2d 859.)