■ In the Matter of TERRI OO., Respondent, v MICHAEL QQ., Appellant.—Yesawich, Jr., J. Appeal from an order of the Family Court of Saratoga County (James, J.), entered May 20, 1986, which granted petitioner's application, in a proceeding pursuant to Family Court Act article 5, to adjudicate respondent as the father of petitioner's child.

A child was born to petitioner on June 21, 1985; petitioner was then, and remains, unmarried. Prior to a Family Court hearing to determine paternity, respondent, the alleged father, obtained an order requiring him, petitioner and the child to submit to a human leukocyte antigen (HLA) blood tissue test, which yielded a resulting possibility of paternity of 99.1%.

At the hearing, petitioner, who appeared *pro se,* testified to having had a relationship with respondent from June 1984 until October 1984 during which numerous acts of sexual intercourse occurred. She also testified she had sexual intercourse on two occasions with a man other than respondent during September 1984 and October 1984—ostensibly the time of conception. Additionally, petitioner acknowledged being with still another man in New Mexico in October 1984 with whom she also had sexual relations, although the precise date was not identified. Respondent testified that before the parties terminated their "live-in" relationship, petitioner was seen with others, presumably the men with whom she testified that she had intercourse. After the hearing, Family Court found respondent to be the father of petitioner's child.

On this appeal, respondent makes a compelling argument that petitioner failed to carry her burden of establishing paternity by clear and convincing evidence *(see, Matter of Jane PP. v Paul QQ.,* 65 NY2d 994, 996). The undisputed testimony is that petitioner had relations with respondent and two others during the critical period and there is no evidence that contraceptives were used, thus precluding exclusion of either of them on this basis; and, significantly, petitioner admitted that she was unsure who the father was. Furthermore, she was unable to fix the date of her last menstrual

period or approximately when conception occurred. Employing the normal gestation period of 266 days, it is obvious that one other than respondent could have fathered this full-term baby. Clearly the testimonial proof does not warrant labeling respondent the father. Nor is the HLA test result, the only other relevant evidence in the record, dispositive of the issue for this testing technique has yet to be recognized as conclusive of paternity (see, Matter of Julie UU. v Joseph VV., 108 AD2d 1038, 1039). Since petitioner has not clearly and convincingly demonstrated that respondent is the father, the order of filiation must be reversed.

Order reversed, on the law, without costs, and petition dismissed. Mahoney, P. J., Weiss and Yesawich, Jr., JJ., concur.

Kane and Levine, JJ., dissent and vote to affirm in a memorandum by Levine, J. Levine, J. (dissenting). We respectfully dissent. In our view, the circumstances presented here permitted Family Court, whose weighing of the scientific evidence in this regard is entitled to great deference (Matter of Moon v Mark A., 109 AD2d 1017, 1019), to find that the results of the HLA test established paternity by clear and convincing evidence. First, the evidence of a normal period of gestation, of the occurrence of petitioner's last menstrual period in September 1984 and the birth of the child on June 21, 1985, supported Family Court's finding that conception most likely occurred in the last few days of September or the first few days of October 1984. Respondent admitted having had sexual relations with petitioner during the critical period. Moreover, petitioner's forthright admissions regarding the times when she had relations with two other men, which the majority finds fatal to her case, would clearly have excluded access by one of the two during the period of likely conception. The probability of respondent's paternity established by the HLA test was 99.1%. This percentage made it "extremely likely" that respondent was the father (see, 1 Schatkin, Disputed Paternity Proceedings § 8.13 [Feb. 1987 Supp], at 144 [emphasis supplied]).

As is fully explained in the thoroughly researched opinion by Judge Arthur J. Abrams of the Suffolk County Family Court in Department of Social Servs. v Kenneth S.N. (120 Misc 2d 453), the possibility of paternity of the other man who had intercourse with petitioner during the critical period is at most miniscule. As held by the Second Department in Matter of Constance G. v Herbert Lewis L. (119 AD2d 209, 212), "[e]ven in a case where a third party had access to the mother

during the time of probable conception, the HLA test may establish paternity of the putative father". This conforms to the view of the leading authority on the law of paternity (1 Schatkin, Disputed Paternity Proceedings § 11A.03, at 11A-7— 11A-8 [4th ed]). The case of *Matter of Jane PP. v Paul QQ.* (65 NY2d 994), relied upon by the majority, is actually authority for the principle that a high probability HLA test result may be sufficient to establish paternity despite evidence of access by others. In reversing the adjudication of paternity in *Matter of Jane PP.,* where the HLA test results were improperly introduced in evidence and the petitioner had had intercourse with another man during the critical time period, the Court of Appeals did not direct dismissal of the petition but remitted for a new hearing. The court held: "A human leukocyte antigen (HLA) test was administered in this case and, assuming that the foundational problems indicated by the Appellate Division are curable, as they appear to be, the test would be admissible (Family Ct Act § 532) and *could elevate the evidence to meet the requisite standard of proof" (supra,* at 996 [emphasis supplied]).

Accordingly, we vote to affirm the adjudication of paternity.