■ In the Matter of ROSE M. PANDOZY, as Commissioner of the Clinton County Department of Social Services, on Behalf of LISA W., Respondent, v PERRY X., Appellant.—Harvey, J. Appeal from an order of the Family Court of Clinton County (Lewis, J.), entered February 6, 1987, which granted petitioner's application, in a proceeding pursuant to Family Court Act

article 5, to adjudicate respondent as the father of a child born to Lisa W.

Petitioner, the Commissioner of the Clinton County Department of Social Services, commenced this proceeding against respondent seeking a declaration that he was the father of a child born out of wedlock to Lisa W. The child was born on October 13, 1983 and weighed 6 pounds, 6¾ ounces. The mother was 19 years old when the child was born. The uncontested medical records indicated that the child was born at full term, within a week of the due date established earlier in the pregnancy. A sonogram examination, dated May 25, 1983, set the gestational age of the fetus, at that time, at approximately 19 weeks, and thus indicated that conception occurred in mid-January 1983.

At the hearing, testimony was taken from the mother and respondent. Both stated that they had engaged in sexual intercourse on only one occasion. Although the mother had been taking oral contraceptives since she was 14 years old, she stated that the first time she ever engaged in sexual intercourse was the time with respondent. She further stated that she had stopped taking the oral contraceptives about one month before she had relations with respondent and that they did not use any other form of birth control. The mother initially testified that the intercourse occurred on January 18 or 19, 1983. She stated that she remembered the date because it was respondent's birthday. Respondent testified that his birthday was February 11, and that it was on that night or the night before when he and the mother engaged in sexual intercourse. Upon further questioning, the mother indicated that she had arrived at the January date merely by figuring back nine months from the birth of the child.

There was also evidence that the mother was engaging in repeated acts of intercourse with another man near the relevant time. In her bill of particulars, she indicated that she had relations with the other man in "late January and February, 1983". At the hearing, the mother changed her story and stated that her first intercourse with the other man was on February 15, 1983. She stated that the other man used a condom on each occasion when they had sex. She admitted that she had previously sent letters to both respondent and the other man telling each that he was the father of the child. At the time of the hearing, the other man was in the military and had not been pursued by petitioner.

Also introduced at the hearing were the results of the HLA tests which set at 86.8% the probability that respondent is the

child's father. When combined with the results of other blood-grouping tests, the probability increased to 94.9%. Family Court fixed the date of conception as February 11, 1983. Relying upon the blood test results, the fact that no contraceptive devices were used and the mother's assertion that she had never engaged in sexual intercourse previous to the time with respondent, Family Court found that there was clear and convincing evidence that respondent was the child's father. This appeal followed.

We reverse. In a paternity proceeding, the petitioner must establish paternity by " 'clear and convincing' evidence, evidence which is 'entirely satisfactory' and creates a genuine belief that respondent is the father of the child" *(Matter of Commissioner of Social Servs. [Patricia A.] v Philip De G.,* 59 NY2d 137, 141-142; *accord, Matter of Jane PP. v Paul QQ.,* 65 NY2d 994, 996). Based on the only credible evidence submitted, Family Court determined that on February 11, 1983 the mother engaged in sexual intercourse with respondent. However, if conception occurred on February 11, 1983, the length of the mother's pregnancy would have been 244 days. It is well recognized that the normal period of gestation from conception to birth is 266 days *(Matter of Terri OO. v Michael QQ.,* 132 AD2d 812, 813) and a material deviation from the normal gestation period requires an explanation through medical testimony *(Matter of Morris v Terri K.,* 60 AD2d 728, 729; *Matter of Suzanne "J" v Russell "K",* 46 AD2d 935). Here, there was no medical testimony to explain the 22-day deviation from the normal period and, indeed, the only medical evidence in the record indicates that the birth was at full term. Further, the fixing of the February 11, 1983 date of conception somewhat undermines the probative value of the results of the HLA tests *(see,* 1 Schatkin, Disputed Paternity Proceedings §§ 11A.02, 11A.11), leaving merely the mother's often inconsistent and contradictory testimony and the undisputed fact that she had intercourse with at least one other man during or near the critical time period. It is clear that petitioner failed to meet the burden of proof and thus the petition should have been dismissed.

Order reversed, on the law, without costs, and petition dismissed. Kane, J. P., Weiss and Harvey, JJ., concur.

Levine and Mercure, JJ., concur in part and dissent in part in a memorandum by Levine, J. Levine, J. (concurring in part and dissenting in part). We agree with the majority that, based upon Family Court's finding that conception occurred on February 11, 1983, reversal is required because of the absence

of expert medical testimony to explain the apparent prematurity of the child born 244 days later. However, we are of the view that the case should be remitted for a new fact-finding hearing, rather than dismissed outright, as held by the majority. The mother's initial testimony was that the single act of intercourse with respondent took place on January 18 or 19, 1983. Acceptance of that testimony would have been consistent with the sonogram results and the other medical evidence that the child was born full term. The foregoing proof, taken with the results of the combined HLA test indicating a 94.9% probability of paternity, clearly established a prima facie case (see, Matter of Duquette v Edward FF., 106 AD2d 694, lv denied 65 NY2d 602). On this version of the facts, the concession by the mother that she had intercourse with another young man starting February 15, 1983 would not have impaired the proof of respondent's paternity. The mother's sexual relations with the other person would have occurred outside the critical period of possible conception and, in any event, her testimony was that contraception was employed (see, supra). Thus, the infirmity in petitioner's proof arises solely out of Family Court's finding that the only intercourse between the mother and respondent (and, hence, conception) occurred on February 11, 1983. We disagree with the majority that this finding was consistent with "the only credible evidence". Indeed, this finding was based upon extremely ambivalent testimony by the mother which is subject to other interpretations, and is inconsistent with the medical evidence previously discussed, which strongly supports the mother's initial testimony that intercourse and conception took place some four weeks earlier.

In view of the fact that, on one version of the credible evidence, paternity was satisfactorily established and that, on a new hearing, petitioner may well be able to produce medical or other evidence to clear up the ambiguities resulting from Family Court's finding on the date of conception, remittal for a new hearing is dictated, rather than dismissal (see, Matter of Jane PP. v Paul QQ., 65 NY2d 994, 996; Matter of Riley v Benware, 105 AD2d 1122, 1123).