■ TAMARA B., Appellant, v PETE F., Respondent.—Orders, Family Court, New York County (Ruth Jane Zuckerman, J.), entered on or about March 30, 1986, July 29, 1986, and September 2, 1986, respectively, which dismissed petitioner-appellant's paternity petition following a fact-finding hearing, unanimously reversed, on the law, the facts and in the exercise of discretion, the petition reinstated and the matter remanded, without costs. Order of said court, entered on or about January 5, 1988, which denied petitioner-appellant's motion to reopen the paternity proceedings to present rebuttal testimony by petitioner's expert witness, unanimously reversed, on the law, the motion granted and the matter remanded, without costs.

Petitioner commenced this proceeding pursuant to article 5 of the Family Court Act on March 14, 1985, for an order of filiation declaring respondent to be the father of her child born on March 11, 1983. At the hearing, petitioner testified that she began to date respondent, who had been a casual acquaintance for about a year, in August of 1981, and that they regularly engaged in sexual intercourse from October 31 of that year until the end of June 1982. On June 29, 1982, petitioner learned from her gynecologist that she was eight weeks' pregnant and on March 3, 1983, she was delivered of a child by Caesarean section. The child's gestation age was

determined to be a least 41 weeks. Petitioner claimed that she identified respondent as the child's father but that the social worker at the hospital did not put this on the application for the child's birth certificate. The infant was, however, given the last name B.....-F........ Although respondent admitted having had sexual intercourse with petitioner on two occasions, he maintained that the last such occasion was in March 1982.

Respondent's witnesses challenged petitioner's claim that she had maintained an exclusive sexual relationship with him until June 1982, and that she had initially identified respondent as the father of her child. One of these witnesses was a friend and business associate who had purchased respondent's restaurant in October 1981. When he defaulted on the note, respondent regained possession of the restaurant but retained him as manager. In August 1982 he repurchased the restaurant from respondent and, at the time of the hearing, had an outstanding debt to respondent of $80,000.

This witness maintained that he began dating petitioner in October 1981 and he had had sexual intercourse with petitioner in April, May and June of 1982. He further stated that petitioner told him that she was pregnant and that he was the father. Allegedly, he thereafter gave her money, totaling $15,000.

Petitioner offered the results of the red blood cell (RBC) and human leucocyte antigen (HLA) tests which were received in evidence over respondent's objection. In a letter to the court, Dr. Leon Sussman, who performed the tests, certified that the paternity index for the combined test results yielded odds of 719 to 1, indicating a "probability of paternity" of 99.86%. Respondent called Professor Richard Borowsky, an associated professor of biology at New York University and an expert in genetics. Professor Borowsky took issue with the analytic method applied by Dr. Sussman and others to the HLA haplotype data. Although Professor Borowsky acknowledged on cross-examination that the paternity index method is probably used by the majority of laboratories doing HLA tests and is recommended by the AMA-ABA guidelines, he nevertheless maintained that it would be "absolutely meaningless to ally the P.I. [paternity index] method to HLA." Using a statistical formulation that Professor Borowsky considered more reliable, which substituted males from a narrower ethnic group having the obligatory genes for white males generally, the odds index dropped from 719 to 1 to 5 to 1. However, Professor Borowsky testified that he did not know what the results would be if Greek males (the respondent is ethnically Greek) were substi-

tuted instead of the other narrow ethnic group for white males generally. Although such tables may exist for Greek males, Professor Borowsky did not have them.

The Family Court found petitioner's credibility to be "very low" and her testimony of a continuing, exclusive sexual relationship with respondent ending in June 1982 to be incredible. The court credited respondent's witness's testimony that he had sexual intercourse with petitioner during the period of possible conception and that, shortly after her pregnancy was confirmed, she accused him of being the father. The only question which remained, in light of these findings, was whether the evidence of the combined results of the HLA and RBC tests was sufficiently probative to establish otherwise. While noting that it was "rare for qualified expert testimony challenging the HLA/RBC results to be offered", the court nevertheless found the uncontradicted testimony of Professor Borowsky persuasive and dismissed the petition.

One year after the Family Court rendered its decision and order of July 29, 1986, petitioner moved to reopen the paternity proceeding to permit rebuttal testimony by Dr. Sussman in support of the blood test results. The Family Court, finding that petitioner had been adequately represented by assigned counsel at trial and that the trial transcripts had been available to her attorney since early 1987, held that the motion was untimely under CPLR 4405. As petitioner had given no satisfactory reason why the court should exercise its discretion to grant her untimely motion, it was denied.

Upon review of the record, we conclude that the court should have granted petitioner's motion to reopen the proceedings. The HLA test is an exclusionary test which, by comparing genetic characteristics present in the child's blood cells but not in the mother's with those of the putative father, can establish the likelihood of the child having inherited those characteristics from the putative father as opposed to other males in the population at large. When used in conjunction with other blood-grouping tests, it can establish a very high theoretical degree of paternity or nonpaternity. However, that degree of probability depends on the blood types of the individuals involved and the number of related blood-group systems used in addition to the HLA test. *(Matter of Department of Social Servs. v Thomas J. S.,* 100 AD2d 119, 122-123 [2d Dept], *appeal dismissed* 63 NY2d 675 [1984].)

Although the result of an HLA test is not totally conclusive, it has been deemed an accurate and reliable indicator of paternity by the Legislature and the courts in this State *(see,*

Family Ct Act § 532; *Merrill v Ralston,* 95 AD2d 177 [1st Dept 1983]; *Matter of Constance G. v Herbert Lewis L.,* 119 AD2d 209, 212 [2d Dept 1986]; *Matter of Moon v John DD.,* 130 AD2d 859 [3d Dept 1987]). HLA test results are admissible as records kept in the regular course of business *(Matter of Abwilda V. v Thomas W.,* 122 AD2d 950 [2d Dept], *appeal dismissed* 69 NY2d 706 [1986]), however, the meaning and accuracy of the test result is subject to challenge by expert testimony such as that introduced by respondent herein. Professor Borowsky, who was accepted by the court as an expert in the field of genetics, however, did not limit his testimony to the validity of the particular test results in this case, but challenged the validity of an analytical method which is widely accepted by other experts in the field. HLA test interpretations "are not based upon arbitrarily assigned numerical probability values or upon a statistical theory unsupported by the evidence, but are based upon objectively ascertainable data and a statistical theory based upon research and experiment" *(Matter of Department of Social Servs. v Thomas J. S.,* 100 AD2d, *supra,* at 123-124). Given the high degree of probative value courts have accorded HLA test results in paternity proceedings, Family Court should have granted petitioner's motion to provide expert rebuttal testimony on the question of the appropriate statistical bases and analytic method to be applied in interpreting this test. *(See, Matter of Jane PP. v Paul QQ.,* 65 NY2d 994, 996 [1985].) Concur—Ross, J. P., Asch, Rosenberger, Ellerin and Wallach, JJ.