■ In the Matter of NANCY M. G., Appellant, v JAMES M.,

Respondent.—In a proceeding pursuant to Family Court Act article 5 to establish paternity and for an order of support, the appeal is from an order of the Family Court, Rockland County (Bergerman, J.), dated July 31, 1987, which, after a hearing, dismissed the petition.

Ordered that the order is reversed, on the law and the facts, with costs, the petition is granted to the extent of adjudging the respondent to be the father of the subject child, and the matter is remitted to the Family Court, Rockland County, for a dispositional hearing on the issue of support.

Although we are reluctant to disturb findings of fact made by a hearing court on the basis of conflicting evidence and involving issues of the credibility of witnesses (see, Matter of Constance G. v Herbert Lewis L., 119 AD2d 209, 210; Matter of Joan G. v Robert W., 83 AD2d 838), we conclude upon our review of the record that the court's findings in this case are contrary to the weight of the credible evidence (see, Matter of Bernadette C. v Jossival St. V., 128 AD2d 774).

At the hearing, the petitioner introduced the results of a human leucocyte antigen (hereinfter HLA) test which combined with the testing for other genetic markers indicated a 98.72% likelihood of paternity of the respondent. Although the HLA test has not yet been recognized as conclusive evidence of paternity (see, Family Ct Act § 532; Matter of Denise H. v John C., 135 AD2d 816; cf., Matter of David CC. v Rose GG., 142 AD2d 797), we place great reliance upon such test results as being highly accurate and carrying a high degree of probative value on the issue of paternity (see, e.g., Matter of Constance G. v Herbert Lewis L., supra, at 212; Matter of Department of Social Servs. v Thomas J. S., 100 AD2d 119, 124). Nor do we find that the highly accurate HLA test results coupled with the tests for other genetic markers were seriously undermined by the testimony of the respondent's expert which placed a lesser degree of probability upon such test results. As even our dissenting colleague notes, that expert acknowledged he held a minority view as to how HLA testing should be analyzed.

The record further contains the unrebutted testimony of the petitioner that during the critical time period she had no sexual relations with any man other than the respondent. Notably in this regard, the hearing court made no determination in its ruling that the petitioner's testimony was incredible and, therefore, should not be credited (compare, Matter of Department of Social Servs. v Richard A., 121 AD2d 382; Matter of Harstein v Mike S., 107 AD2d 684). The Family

Court, in determining the weight to be given the HLA test results, appeared to give undue consideration to the date of conception estimated by the respondent's expert to be February 3, 1985, a deviation of approximately two weeks from the date the petitioner testified she met the respondent and first engaged in sexual intercourse with him. This date is controverted by the petitioner's testimony that her last menstrual period occurred in early February. The dissent considers this two-week differential to be determinative on the issue of paternity. The courts have held that the date of conception need not even be established to a medical certainty (*Matter of Margie L. v Gary M.,* 50 AD2d 1009; *Greenberg v Colman,* 32 AD2d 913, *affd* 28 NY2d 960; *Matter of Smith v Lane,* 101 Misc 2d 615, 622) and, therefore, the difference between the estimated date of conception and the first date of intercourse at bar is not determinative. Certainly, such testimony standing alone is not determinative of paternity and should not be adopted as evidence of a lack of paternity to the exclusion of the highly reliable and accurate HLA test. The Family Court erred by according too much weight to the date of conception and too little to the HLA test results.

Support for our conclusion may be found in the recent decision of our colleagues in the First Department in the case of *Tamara B. v Pete F.* (146 AD2d 487, 490) in which the court held that "[g]iven the high degree of probative value courts have accorded HLA test results in paternity proceedings, [the] Family Court should have granted petitioner's motion to provide expert rebuttal testimony on the question of the appropriate statistical bases and analytic method to be applied in interpreting this test". The First Department reached this determination notwithstanding the fact that the Family Court had characterized the petitioner's credibility as being "very low" in general and her testimony of a continuing exclusive sexual relationship with the respondent as being incredible.

We assign further error to the Family Court's failure to consider the HLA test result of a nonparty with whom the petitioner lived during the subject pregnancy and with whom the respondent sought to suggest through cross-examination at the hearing the petitioner had sexual relations on the night before she met the respondent. The HLA test result excluded the paternity of this nonparty and, thus, was highly relevant to the proceedings. Authority to consider voluntary medical examinations is provided pursuant to CPLR 4518 (*see, Salicco v Salicco,* 125 Misc 2d 137, 143-144). Such test results are not excludable as evidence in a paternity proceeding simply be-

cause they were not court ordered *(Salicco v Salicco, supra,* at 145-146).

In sum, we are satisfied that the petitioner succeeded in sustaining her burden of proving paternity by clear and convincing evidence *(see, Matter of Jane PP. v Paul QQ.,* 65 NY2d 994, 996; *Matter of Commissioner of Social Servs. v Philip De G.,* 59 NY2d 137, 141-142). Accordingly, we adjudge the respondent to be the father of the subject child and remit the matter to the Family Court, Rockland County, for a dispositional hearing on the issue of support. Thompson, J. P., Rubin and Spatt, JJ., concur.

Balletta, J., dissents and votes to affirm the order appealed from with the following memorandum: The majority has agreed with the petitioner's contention that there was sufficient evidence in the record to satisfy her burden of proof of showing that the respondent was the father of the infant, and further, that the Family Court did not give sufficient weight to the human leucocyte antigen (HLA) test. I respectfully disagree, and vote to affirm the Family Court order dismissing the petition.

While it is true that the results of the HLA test are highly probative, they are not conclusive *(see, e.g., Matter of Denise H. v John C.,* 135 AD2d 816; *Matter of Terri OO. v Michael QQ.,* 132 AD2d 812; *Matter of Moon v Mark A.,* 109 AD2d 1017). Such test results are only one item of evidence among many which the trier of facts has at its disposal to aid in its determination, and the results need only be given such weight as the trier of fact deems appropriate *(see, Matter of Department of Social Servs. v Thomas J. S.,* 100 AD2d 119).

The petitioner acknowledged that she had sexual relations with her former fiancé, William D., in January 1985, although it is not clear when in January that contact occurred. Further, she originally had thought that the man she lived with during the period of her pregnancy, William G., was the father of her child but later changed her mind only after a sonogram placed the date of conception in early February. She acknowledged having met William G. on a blind date, on the day prior to meeting the respondent, but denied having had any sexual contact with him at that time.

As mentioned above, a sonogram taken in June placed the date of her conception in early February. As a matter of fact, the respondent's medical expert estimated the date of conception to be February 3, 1985, after having reviewed the petitioner's hospital records, the petitioner's ultrasonography re-

cords, and the records of her treating physician. More importantly, his opinion was not challenged and no questions were asked about the reliability of his date of conception estimate or the margin of error with respect to such estimates. Although the petitioner conceived, according to the uncontroverted testimony of respondent's expert, on February 3, 1985, which estimate is further corroborated by the results of the independent sonogram, she did not meet the respondent until approximately February 22, 1985 (19 days later), with sexual intercourse occurring later that evening.

A second expert also testified for the respondent to the effect that the HLA test result of 98.72% was greatly excessive and that a more probable result would have been 84%. While it is true that he held a minority view about how HLA testing should be analyzed, his testimony was nevertheless before the court and could be considered, together with all of the other testimony. The petitioner herein failed to present any expert rebuttal testimony to contradict this testimony (cf., Tamara B. v Pete F., 146 AD2d 487).

In the light of the unrefuted testimony presented by the respondent that conception occurred more than two weeks before the parties met, considered together with all of the other evidence in the case, in my view the Family Court could properly find the HLA test results inconclusive, and the Family Court's conclusion that the petitioner failed to meet the required burden should not be disturbed (see, Matter of Commissioner of Social Servs. v Philip De G., 59 NY2d 137, 141-142). "The fact that the result of a human leucocyte antigen test * * * revealed a probability of petitioner's paternity of 98.6% does not detract from [the] Family Court's determination" (Matter of David CC. v Rose GG., 142 AD2d 797; see also, Matter of Pandozy v Perry X., 141 AD2d 894).