■ In the Matter of TAMARA B., Appellant, v PETE F., Respondent.—Order of the Family Court, New York County (Ruth Jane Zuckerman, J.), entered May 20, 1991, which dismissed petitioner-appellant's paternity petition, affirmed, without costs.

On a prior appeal *(Tamara B. v Pete F.,* 146 AD2d 487, *amended* 157 AD2d 636), this court reversed an order denying the paternity petition and remanded the matter to reopen the trial for the purpose of receiving testimony of petitioner's expert witness in rebuttal to testimony presented by respondent's expert. On remand, Family Court ruled that the rebuttal testimony did not dispel the questions raised by respondent's expert witness with respect to the probability, as indicated by red blood cell and human leucocyte antigen (HLA) tests, that respondent was the father of petitioner's child. The court therefore adhered to its original determination.

The expert witnesses disagreed on the probability of paternity indicated by test results which detect the presence of a pair of genes, or haplotype, common to the child and the putative father but absent in the mother. The results are compared with a table which reflects the frequency of the particular haplotype in the pertinent ethnic group (white, black, hispanic or oriental) and therefore the probability that the detected haplotype may have been contributed by a male other than respondent.

Comparing the results with a table for white males in the general New York City population, petitioner's expert derived a probability of 719-to-one that respondent is the father of petitioner's child. Respondent's expert witness, however, stated that, when adjusted for haplotype uncertainty *(see, Matter of Commissioner of Social Servs. of City of N. Y. v Louis T.,* 126 Misc 2d 731, 735-738), the odds are 57-to-one, not 719-to-one. Furthermore, the frequency of the haplotype in a group of males having a similar ethnic background to the putative father is significantly greater. For example, if respondent is compared with a group of Ashkenazi Jews, the greater frequency of the haplotype in that population yields a proba-

bility that respondent is the father of only 5-to-one. At trial, testimony was received from two Greek males that each had sexual relations with petitioner during the relevant time interval (respondent is also Greek), and other testimony suggested that a friend of petitioner, an Ashkenazi Jew, may have been a paramour.

It should be emphasized that the HLA test is not conclusive *(Tamara B. v Pete F., supra,* at 489) but yields only a probability. To a person struck by lightning, statistical improbability is scant comfort. In any event, the weight to be accorded to the opinion testimony given by petitioner's expert witness is within the province of the trier of fact, to be assessed together with other credible evidence *(Matter of Sylvestri,* 44 NY2d 260, 266) and need not be credited even when uncontroverted by conflicting testimony *(Commercial Cas. Ins. Co. v Roman,* 269 NY 451, 456-457). "The trier of fact is not required to accept an expert's opinion to the exclusion of the facts and circumstances disclosed by other testimony and/or the facts disclosed on cross-examination of the expert witness" *(Herring v Hayes,* 135 AD2d 684). Family Court properly considered the testimony given by all of the witnesses together with the documentary evidence in reaching its decision. Concur—Murphy, P. J., Carro and Rubin, JJ.

Sullivan and Rosenberger, JJ., dissent in a memorandum by Rosenberger, J., as follows: In my view, the Family Court's determination that the petitioner failed to meet her burden of proving paternity by clear and convincing evidence was against the weight of the evidence.

In an order entered January 12, 1989 *(Tamara B. v Pete F.,* 146 AD2d 487, *amended* 157 AD2d 636), this court reversed certain orders of the Family Court in this matter dismissing the paternity petition following a fact-finding hearing and denying the petitioner's motion to reopen the proceedings to present rebuttal testimony by an expert witness on the question of the appropriate statistical basis and analytic method to be applied in interpreting a human leucocyte antigen (HLA) test. After the petitioner's expert testified on remand, the Family Court adhered to its original determination and dismissed the petition.

The evidence adduced at the first hearing was summarized in our earlier order (146 AD2d 487, *supra).* While we noted that the Family Court found the petitioner's credibility to be " 'very low' " *(supra,* at 489) and her testimony as to having maintained an exclusive sexual relationship with the respon-

dent during the period of possible conception to be incredible, we also found that the question remained as to whether, in light of these findings, the evidence of the combined results of the HLA and red blood cell (RBC) tests was sufficiently probative to establish that the respondent was the father of the child.

Both the respondent and the petitioner have now presented testimony from experts in the field. While the majority affirms the Family Court's adoption of the opinions expressed by the respondent's expert, this expert, who placed a lesser degree of probability upon the HLA and RBC test results, holds a minority view in the scientific community as to how such tests should be analyzed (*Matter of Nancy M. G. v James M.*, 148 AD2d 714; *In re Elizabeth C. G.*, NYLJ, Nov. 2, 1987, at 16, col 3 [Fam Ct, NY County]; *Matter of Commissioner of Social Servs. v Bart D.*, 121 Misc 2d 425). The methodology employed by this expert has been rejected by the courts (*supra*).

The petitioner's expert, based on his analysis of the tests, found the probability of the respondent's paternity to be 99.86%. Although the other conflicting evidence at the hearing might well have supported a determination in favor of either party, the results of the HLA and RBC tests weight the determination in favor of the petitioner (*see, Barber v Davis*, 120 AD2d 364). Despite my reluctance to disturb the findings of fact made by the Family Court on the basis of conflicting evidence and issues of credibility of the witnesses, on review of the record, the Family Court's findings in this case were contrary to the weight of the credible evidence. The HLA and RBC test results, together with other evidence indicating that the respondent was the child's father, were sufficient to meet the petitioner's burden of proving paternity by clear and convincing evidence (*see, Matter of Nancy M. G. v James M., supra; Barber v Davis, supra*).

Accordingly, I would reverse and grant the petition.