■ In the Matter of DEPARTMENT OF SOCIAL SERVICES OF SUFFOLK COUNTY, on Behalf of DEBRA L., Appellant, v WILLIAM J., Respondent. [594 NYS2d 810] —In a proceeding pursuant to Family Court Act article 5 to establish paternity, the petitioner Department of Social Services of Suffolk County appeals from an order of the Family Court, Suffolk County (Hall, J.), entered February 21, 1990, which, after a hearing, dismissed the petition.

Ordered that the order is reversed, on the facts, without costs or disbursements, the petition is granted, and the respondent is declared the father of the subject child.

The petitioner contends that the court erred in dismissing the petition on the basis that it had not proved, by clear and convincing evidence, the critical issue of sexual access by the respondent during the relevant period of conception. The petitioner argues that dismissal was not warranted since the human leucocyte antigen (hereinafter HLA) test showed a probability of paternity of 96.86%, and the deoxyribonucleic acid (hereinafter DNA) test showed a probability of paternity of 99%. We agree. In view of certain other evidence adduced at the hearing conducted by the Family Court, these test results render the respondent's denial of sexual intercourse incredible, and we therefore reverse.

The results of the HLA test are not conclusive on the issue of paternity *(see, e.g., Matter of Denise H. v John C.,* 135 AD2d 816; *Matter of Terri OO. v Michael QQ.,* 132 AD2d 812; *Matter of Moon v Mark A.,* 109 AD2d 1017). Here, however, a DNA test was also performed. According to the expert testimony given at the hearing, the combined indices resulted in a value of 2,984,773 to 1, or 99.99+%, in favor of the respondent's paternity, the sort of figures one court has called "staggering" *(Matter of Baby Girl S.,* 140 Misc 2d 299, 305). While all tests probative of paternity are to be used only "to aid in the

determination" of paternity (Family Ct Act § 532 [a]), even where they are used in combination, there is enough in the record as a whole to conclude that the petitioner has met its burden of proving the respondent's paternity by "clear and convincing proof" (Matter of Jane PP. v Paul QQ., 65 NY2d 994).

In addition to the mother's testimony regarding sexual intercourse with the respondent during July 1985, when conception occurred, the respondent himself admitted an act of fellatio with the mother a few months earlier at a 1984 New Year's Eve party. Further, the mother's stepmother testified that the respondent was a frequent visitor at their home during the summer of 1985, indicating physical access during the relevant period after the mother and the respondent already had experienced sexual intimacy. The respondent denied having had sexual intercourse with the mother, then or ever. He also denied visiting the mother at home. Nevertheless, he admitted being around the house often because of his friendship with neighbors and the mother's brother.

The Family Court rejected the mother's claim of sexual intercourse, citing her demeanor and discrepancies in her testimony. It found the respondent to be candid and credible, and implicitly accepted all of his essential denials. However, in view of his prior sexual contact with the mother and his physical access to her in July 1985, the unchallenged and overwhelming proof of paternity contained in the HLA and DNA test results cause his denials to pale to the point of transparency and simply are not credible. The respondent should not be able to rely solely on a courtroom performance which consists of nothing more than bald denials to defeat objective scientific proof which has identified him as the father to a virtual certainty (see, King v Tanner, 144 Misc 2d 1073, 1077-1078; Matter of Baby Girl S., supra). We therefore conclude that dismissal of the petition was error and that the relief sought therein should have been granted. O'Brien, Copertino and Santucci, JJ., concur.

Balletta, J. P., dissents and votes to affirm the order with the following memorandum, in which Pizzuto, J., concurs. I do not share the view of the majority that the record as a whole indicates that the petitioner has met its burden of proving the respondent's paternity by "clear and convincing proof". Therefore, I respectfully dissent and vote to affirm the order of the Family Court.

Although the Family Court may not have as clearly articulated the appropriate standard for determining paternity as it

could have, I do not share the petitioner's opinion that the Family Court improperly used a two-step process. It is clear from a close reading of the order that the Family Court carefully considered the results of the blood tests and the weight to be accorded to them. Contrary to the petitioner's arguments, the Family Court did *not* completely ignore the blood test results. Nor do I agree with the majority that the test results render the respondent's denial of sexual intercourse incredible.

While it is true that the results of the HLA test are highly probative, they are not conclusive *(see, e.g., Matter of Denise H. v John C.,* 135 AD2d 816; *Matter of Terri OO. v Michael QQ.,* 132 AD2d 812; *Matter of Moon v Mark A.,* 109 AD2d 1017).* The results of the additional DNA test which was taken do not render the combination of tests conclusive, as conceded by the majority. Such test results are only one item of evidence among many which the trier of facts has at its disposal to aid in its determination, and the results need only be given such weight as the trier of facts deems appropriate *(see, Matter of Department of Social Servs. v Thomas J. S.,* 100 AD2d 119).

Indeed, both of petitioner's experts testified that no test results, either the HLA or the DNA, can conclusively establish paternity. Moreover, one of the petitioner's experts acknowledged that there are a number of non-test-result factors that must be considered in any paternity case, including the issues of "access during the relative period of conception, the use of contraceptives on a regular basis, credibility of the witnesses, testimony relative to access, and times of access, access by other men [and] the list goes on". This same expert also testified that his opinion with respect to the probability of paternity was based upon the assumption of access by the respondent during the relevant period of conception. In the instant case, the lack of credible testimony that the respondent had access to the mother during the period of conception negates whatever probative value the blood test results may have had.

The Family Court rejected the petitioner's contention that the blood tests were dispositive of the case, noting that the blood tests were only evidence of paternity and not conclusive proof:

"As the petitioner's expert testified, there were two additional tests which could have been performed, either of which may well have excluded this respondent as the father. These

tests were not conducted. However, the most important point which must be kept in mind, and which was reiterated by the petitioner's expert, is that the test itself does not *establish* paternity. The tests demonstrate a probability only, which is to be considered by the court as evidence of paternity, not as absolute conclusive proof. *Denise H. v John C.,* 135 AD2d 816; *Matter of David CC.,* 142 AD2d 797.

"Unless the court is satisfied that the respondent had access during the appropriate period, the probabilities established by the blood tests are only that, and cannot make up for any failure of proof in that regard. Again, while there may be an inclination to defer to the test results in many paternity cases, the court simply cannot do so on this record. *The court believes that it would be improper to attach any significant weight to blood test results when, in the first instance, there is a total lack of credible proof of the paramount issue of sexual intercourse between the parties"* (emphasis added).

The finding of the Family Court that there is a total lack of credible proof of the paramount issue of sexual intercourse between the mother and the respondent is supportable based upon the numerous inconsistencies in the testimony of the mother. Initially, she told her mother that someone named Tom, whom she met at a 7-11 store, was the father of the child. Thereafter, she told her mother that at the time of conception, she was having intercourse with several boys and did not know who the father was. Finally, she pointed an accusing finger at the 15-year-old respondent, claiming that she did not want to get herself in trouble on the basis of a possible statutory rape charge.

The Trial Judge determined that her testimony was incredible. He had the advantage of hearing the testimony from all of the witnesses. While the majority suggests that we should not rely solely on a courtroom performance to defeat objective scientific proof, the Trial Judge would be in a far superior position to evaluate whether this young man's testimony was nothing more than a courtroom performance or represented the truth. The court determined that the testimony which was given by the young man was credible and that the testimony given by the mother totally lacked credibility. Although each one of us as jurists may have come to a different conclusion, in my view, there is no justification for second-guessing the Trial Judge who was able to evaluate the individuals personally. It would appear that he came to the conclusion that this young woman finally pointed an accusing finger because of pressures put on her by her family.

It is clear, therefore, that the Family Court decided the case in accordance with accepted principles. The case of *Matter of Commissioner of Social Servs. [Chaput] v Gee* (106 AD2d 897), relied upon by the petitioner, is distinguishable. In *Chaput,* the hearing court completely refused to consider the blood test results. In the instant case, on the other hand, the Family Court considered the blood test results and accorded them such weight as it deemed appropriate. To adopt the petitioner's arguments in this case would be tantamount to a finding that blood test results are conclusive on the issue of paternity, a finding which would constitute a significant break from the established case law.

Furthermore, it is well established that the findings of a hearing court in a paternity proceeding are entitled to great weight and, generally, should not be disturbed on appeal unless they are found to be contrary to the weight of the evidence *(see, Matter of Sherry G. v George F.,* 183 AD2d 825; *Matter of Shirley R. v Ricardo B.,* 144 AD2d 472, 473). Here, the Family Court has made a positive finding of fact that "there is a total lack of credible proof of the paramount issue of sexual intercourse between the parties". Obviously, without sexual intercourse it would be impossible for the child to have been fathered by the respondent. Unless we are willing to make our own finding that sexual intercourse did, in fact, take place, we must give due deference to the findings of the Family Court. Moreover, since the record supports the resolution of credibility and the findings of fact by the Family Court, I do not think that we would be warranted in substituting our own findings for those of the Family Court. Thus, despite the blood test results, I find no basis in the record before us to disturb the determination of the Family Court *(see, Matter of D'Elia v Curtis S.,* 183 AD2d 768; *Matter of Sherry G. v George F., supra; Matter of Moon v Mark A.,* 109 AD2d 1017, *supra; Matter of Kimiecik v Jesse U.,* 111 AD2d 976; *Matter of Kathleen EE. v Kevin FF.,* 111 AD2d 1046).

In conclusion, I am of the opinion that since the record herein supports the Family Court's determination, and the determination was based upon the proper standards, the petition was properly dismissed *(see, Matter of Laura U. v Mark V.,* 156 AD2d 836; *Matter of David CC. v Rose GG.,* 142 AD2d 797; *Matter of Denise H. v John C., supra).*