■ In the Matter of WESTCHESTER COUNTY DEPARTMENT OF SOCIAL SERVICES, on Behalf of ROSA B., Respondent, v JOSE C., Appellant. [611 NYS2d 704] —Mikoll, J. P. Appeals (transferred to this Court by order of the Appellate Division, Second Department) (1) from an order of the Family Court of Westchester County (Bellantoni, J.), entered July 31, 1991, which granted petitioner's application, in a proceeding pursuant to Family Court Act article 5, to adjudicate respondent to be the father of a child born to Rosa B., and (2) from an order of said court, entered July 28, 1992, which, inter alia, directed respondent to pay for support of his child.

In November 1989 Rosa B. commenced this paternity proceeding pursuant to Family Court Act article 5 to establish that respondent is the legal father of the child (hereinafter the child) born out of wedlock to Rosa in September 1989. In June 1990 the paternity proceeding was amended to include the Westchester County Department of Social Services as petitioner because Rosa and the child became recipients of public assistance.

It appears from the fact-finding hearing testimony that Rosa, a native of Colombia, met respondent, her landlord, in November 1988. She was then residing in one of respondent's apartment buildings with her daughter from a prior relationship L. (hereinafter L), and L's father, G. (hereinafter G). Rosa

testified that she was not married at the time the child was conceived and had not had sexual relations with L's father since March 1988. She said that G lived in a separate room at the apartment to be near L and that G had moved from the apartment in January 1990. Rosa further stated, in explaining why she told some people she was married to G, that she had difficulty with the English language and that in Colombia, an unmarried woman living with a man would refer to him as her husband to others.

Rosa also testified that respondent became "interested in [her] as a woman" in December 1988 and threatened that unless she had sexual relations with him, he would have sexual intercourse with three-year-old L and have Rosa deported. Rosa further stated that respondent had a key to all the apartments and would enter without knocking. She said that her last menstrual period was in December 1988 and that she did not have sexual intercourse with anyone other than respondent in December 1988 and January 1989. Rosa stated that she informed respondent that she was pregnant in March 1989 and, in response, he gave her a piece of paper with a doctor's name written on it and told her to have an abortion.

Respondent testified that he was married with two children and had a good relationship with his wife. He was involved in construction and had a real estate business. He denied having sexual intercourse with Rosa and having ever threatened her or L. He admitted that he had previously been adjudicated by Family Court to be the father of an out-of-wedlock son.

Family Court found that the fact-finding hearing evidence clearly and convincingly demonstrated respondent to be the child's father and ordered the payment of $250 per month as temporary support. Thereafter, a support hearing was held before a Hearing Examiner and, after hearing the evidence, the Hearing Examiner found that respondent's claimed depreciation expense of $191,340 should be added back into income for purposes of determining child support and ordered respondent to pay $261.50 per week as child support pursuant to the Child Support Standards Act (Family Ct Act § 413).

Respondent filed written objections to the Hearing Examiner's determination, contending that the Hearing Examiner improperly included the depreciation expense in his income along with certain interest income that was not his. Family Court denied respondent's objections by order entered July 28, 1992, finding that the Hearing Examiner properly added back the depreciation expense and properly computed respondent's

support obligation at $261.50 per week. These appeals by respondent followed.

Initially, we note that respondent's appeal from the filiation order entered July 31, 1991 should be dismissed as no appeal lies therefrom because an order of support was requested (Family Ct Act § 1112 [a]; *Matter of Jane PP. v Paul QQ.,* 64 NY2d 15). Further, the notice of appeal from that order was filed a year after entry of the order and was therefore untimely *(see,* Family Ct Act § 1113). Nevertheless, respondent's appeal from the order entered July 28, 1992 is timely and the issue of filiation is properly before this Court.

Family Court's order entered July 28, 1992 should be affirmed. Respondent's argument that Family Court erroneously failed to set forth the basis for its determination is without merit. Review of the record reveals that Family Court adequately set forth the ultimate facts upon which the rights and liabilities of the parties rested and the court's findings are sufficient for intelligent judicial review *(see, e.g., Matter of Ryan v Paul B.,* 124 AD2d 463, 464; *see also,* CPLR 4213 [b]; Family Ct Act § 165).

Respondent's claim that the paternity finding is not supported by clear and convincing evidence also lacks merit. Although the testimony presented in Family Court was conflicting and inconsistent, questions of credibility are best left to the trial court to resolve where the trier of the facts has the opportunity to observe the demeanor and decorum of the witnesses testifying firsthand *(see, Matter of Beaudoin v Robert A.,* 199 AD2d 842, 843-844; *see also, Matter of Erin Y. v Frank Z.,* 163 AD2d 636, 637; *but cf., Matter of Nancy M. G. v James M.,* 148 AD2d 714, 715). We see no reason to disturb Family Court's evaluation of the credibility of the witnesses.

Respondent's next assertion, that reversal is required because petitioner did not meet its burden of proving that no others had sexual relations with Rosa, is rejected because testimony that G may have had sexual relations with her was not corroborated *(see,* Family Ct Act § 531; *see also, Matter of Commissioner of Social Servs. of Saratoga County v David X.,* 186 AD2d 871, 872). And, even if there was evidence of Rosa's sexual relations with G, Rosa denied such allegations and her denial is supported by the HLA test results of G which exclude him as the child's father *(see, Matter of Amy J. v Brian K.,* 161 AD2d 1022, 1023).

Without merit is respondent's argument that G's HLA test results should not have been admitted into evidence because it

was not court ordered and proof of the chain of command was not properly established *(see, e.g., Lory v Lory,* 119 Misc 2d 205, 208-209); the test was properly certified pursuant to CPLR 4518 (c) and no other foundational requirements were necessary *(see, Matter of Helen NN. v Daniel OO.,* 187 AD2d 860). Moreover, in light of the strength of the evidence of respondent's paternity, any alleged technical defect did not affect admissibility but went to weight and was at most harmless error *(see, Matter of Rachel G.,* 185 AD2d 382, 384). The HLA test, although not conclusive, was highly probative on the issue of paternity *(cf., Matter of Beaudoin v Robert A., supra,* at 844; *see,* 1 Schatkin, Disputed Paternity Proceedings § 8.13, at 161-162 [1992 Supp]). Thus, considering all the evidence, including the testimony of Rosa and the highly probative HLA test of respondent of 99.93%, there is clear and convincing evidence to support Family Court's finding that respondent is the father of Rosa's child.

We find unpersuasive respondent's argument that the support award is improper because Family Court included in its calculations the interest he receives on his tenants' security deposit funds held in escrow and added back to his income the $191,340 real property depreciation expense he claimed on his income tax return. Family Court could properly determine that the $191,340 that respondent claimed as depreciation from his income was not an out-of-pocket expense and would have no impact on his ability to pay child support *(see,* Family Ct Act § 413 [1] [b] [5] [ii]; *see also,* Family Ct Act § 413 [1] [b] [5] [v]). Family Court properly exercised its discretion in this regard *(see, Lawrence v Lawrence,* 57 AD2d 859).

The amount representing interest on moneys held in escrow accounts (some $67), which respondent claims was erroneously added to the amount of support he was liable for, does not require a reduction in respondent's support obligation as his income was found to exceed $80,000.

Mercure, Yesawich Jr. and Peters, JJ., concur. Ordered that the appeal from order entered July 31, 1991 is dismissed. Ordered that the order entered July 28, 1992 is affirmed, with costs.